367 So.2d 1155 (1979)
STATE of Louisiana
v.
Isadore LEWIS and Clarence Lewis.
No. 61962.
Supreme Court of Louisiana.
January 29, 1979.
Dissenting Opinion March 8, 1979.
*1156 Raymond A. McGuire, New Orleans, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry Connick, *1157 Dist. Atty., Louise S. Korns, Asst. Dist. Atty., for plaintiff-appellee.
DIXON, Justice.
During the early morning hours of March 11, 1974, officers of the New Orleans police force received a call that a burglary was in progress at the Soul Stirs Lounge at 2318 St. Anthony Street. Upon their arrival, they discovered that an air conditioning unit had been removed from one of the bar's windows and had been placed on the ground. Next to the window unit was a cardboard box filled with bottles of liquor. Officers and police dogs entered the building through the window and a struggle ensued in which the defendants, Isadore and Clarence Lewis, were arrested for simple burglary, a violation of R.S. 14:62. A jury trial was held on September 24, 1974 and the defendants were found guilty as charged. Isadore Lewis was sentenced to six years at hard labor and Clarence Lewis was sentenced as a multiple offender to fifteen years at hard labor. R.S. 15:529.1.
Defendants now appeal their convictions and sentences to this court, having abandoned four of the eleven assignments of error reserved.[1]
Assignment of Error No. 1
In this assignment, the defendants contend that the trial court was in error to refuse to allow defense counsel to question prospective jurors concerning previous experience on criminal juries. The alleged error arose when the defense attorney asked on voir dire, "Did anyone sit on a criminal trial? Was that this past month?" The trial judge interrupted the defense counsel at this point: "Now that's objectionable. You can ask them if they've ever served on a jury before, and they answer yes or no, and that is as far as you can go." The defense then objected to this limitation.
In State v. Holmes, 347 So.2d 221 (La. 1977), this court held that it was reversible error for the trial judge to forbid the defense to inquire into past jury experience while examining prospective jurors on voir dire. However, in State v. Swift, 363 So.2d 499 (La.1978), it was decided that the rule of Holmes was not to be applied retroactively and that similar restrictions on the scope of defendant's voir dire would constitute reversible error in prosecutions begun after the date the opinion was rendered, June 20, 1977. The trial in this case was held in 1974, and the defendants cannot therefore avail themselves of the rule of the Holmes case.
This assignment lacks merit.
Assignments of Error Nos. 2 and 3
These assignments of error concern additional restrictions placed on the scope of voir dire by the trial judge. The second assignment was taken when the judge stopped defense counsel from asking one juror whether he had testified as a government witness. The third assignment was taken when the judge refused to allow the defense to question one venireman whether his decision would be influenced by the fact that he was a postal clerk and therefore paid by the federal government.
The defendant in a criminal prosecution is entitled to make reasonable and pertinent inquiries of the prospective jurors to secure bases for challenges for cause and to secure information for the intelligent exercise of peremptory challenges. State v. Jones, 282 So.2d 422 (La.1973) (on rehearing); State v. Hills, 241 La. 345, 129 So.2d 12 (1961). "For this reason, a wide latitude is allowed counsel in examining jurors on their voir dire, and the scope of inquiry is best governed by a liberal discretion on the part of the Court so that if there is any likelihood that some prejudice is in the juror's mind which will even subconsciously affect his decision, this may be uncovered." State v. Hills, 241 La. at 396, 129 So.2d at 31. However, the questions involved here do not appear consequential to the defendants' case; these are the only complaints of defendants about undue restriction of voir dire, and are not of sufficient importance to reverse.
*1158 These assignments of error are without merit.
Assignment of Error No. 4
By this assignment of error the defendants allege that the trial court erred in overruling a defense objection to the State's employing the term "victim" in its opening statement. While detailing the evidence the State intended to introduce, the prosecutor stated: "The first person I intend to callthere might be a difference in order, but this is what we're going to prove. We're going to have the victim. The lady who owns the store that was burglarized, the barroom."
The defense alleges that the term is improper because it has the effect of arousing sympathy for the complainant and of increasing the jury's passions. The State's employing the term is considered so prejudicial by the defense as to have required the trial judge to have admonished the jury to disregard the remark. C.Cr.P. 771.
Article 771 of the Code of Criminal Procedure condemns the use of irrelevant and immaterial remarks which could prejudice the jury against the State or the defense. The terminology at issue in the present case hardly falls into these categories, for it clearly designates the status of the proprietor of the Soul Stirs Lounge after the burglary.
This assignment of error lacks merit.
Assignment of Error No. 5
The defendants allege that reversible error was committed when the trial judge allowed the prosecuting attorney to question a defense witness as to whether another witness would be lying if their accounts of the facts were in conflict. This alleged error arose when the prosecutor cross-examined the defendants' mother, Mrs. Juanita Lewis, and inquired whether she had requested Miss Morgan to drop the charges against her sons. Defense counsel objected, but before the judge could rule the witness denied having done so. The witness then was asked, "If she said you did, she'd be lying?" To this defense counsel objected again, but was overruled by the trial judge. The question was repeated several times until Mrs. Lewis responded that Miss Morgan would be lying in that case.
Normally the trial judge should prohibit such cross-examination. See R.S. 15:463. The whole subject of the inquiry at the time of the error was a collateral issue, and did not pertain to the guilt or innocence of the defendants. The defense was not prejudiced.
This assignment of error is without merit.
Assignment of Error No. 6
The defense contends that reversible error resulted from the trial court's ruling which permitted the State to recall Miss Morgan as a rebuttal witness, even though she had remained in the courtroom after testifying and had observed the other witnesses. Miss Morgan testified on rebuttal that a pool cue had not been broken before the burglary, that a small yellow light over the bar had been left on which she closed the lounge and that one box of liquor bottles had been found in the alley beside the lounge and another inside behind the bar. She also contradicted the mother of the defendants, Juanita Lewis, and stated that she had indeed been requested to drop charges against the brothers.
An order of sequestration is intended to assure that a witness will testify as to his own knowledge of the case without being influenced by the testimony of other witnesses, and to strengthen the role of cross-examination in developing the facts. State v. Bias, 337 So.2d 426 (La.1976). However, not every violation of a sequestration order must result in exclusion of the witness' testimony because the decision to disqualify is within the sound discretion of the trial judge. C.Cr.P. 764; State v. Johnson, 343 So.2d 155 (La.1977); State v. Badon, 338 So.2d 665 (La.1976). On review, this court will look to the facts of the individual case to determine whether the violation resulted in prejudice to the defendant, State v. Ardoin, 340 So.2d 1362 (La.1976); State v. Barnard, 287 So.2d 770 (La.1973), and will inquire whether the exposure was sufficient to affect the witness' testimony or to undermine the opposing *1159 party's ability to cross-examine. State v. Bell, 346 So.2d 1090 (La.1977).
A review of the record convinces us that no reversible error was committed by the trial court. Miss Morgan identified the boxes and broken cue stick when she testified the first time. Her statements on rebuttal concerning the small light over the bar supported the testimony of the defendants that the lounge was not entirely dark. Finally, her statement that she had been asked to drop the charges added nothing to the case against defendants.
This assignment of error lacks merit.
Assignment of Error No. 7
By this assignment of error the defendant Clarence Lewis contends that the trial court was in error to permit the prosecution to bill him as a multiple offender based on a conviction secured by a guilty plea. The basis of the objection is that the defendant was not advised of his constitutional rights at the time of the guilty plea.
The record of the multiple offender hearing reveals that the defendant Clarence Lewis pleaded guilty to attempted armed robbery on February 16, 1970. Minutes from the criminal district court for that date were read at the hearing by the minute clerk:
"A Alright. I'm reading from the Minutes of Monday, February 16th, 1970, Section `F' Criminal District Court for the Parish of Orleans. Case entitled, Case No. 210-364, State of Louisiana vs. Clarence Lewis. Information for violating Revised Statute 14:64. The defendant accompanied by counsel, Ray McGuire, Esq. was placed at the bar for trial, and through counsel, retracted former plea of not guilty, and pleaded guilty to revised statute 14:27(64), which said plea was accepted by the state, and the defendant waived all delays. Born January 11th, 1952. The court inquired of the defendant if he was aware of his right to jury trial, and right to appeal, if he was aware of the probable and actual consequences of his plea, if his plea be voluntary, and if in truth and in fact he was guilty as pleaded, to which all said inquiries, the defendant replied in the affirmative. The court sentenced the defendant to serve three years at hard labor in the Louisiana State Penitentiary.
Q Mr. Hammer, does the record reflect that Mr. Lewis was advised that he had a right to confront accusers in the event he sought to go to trial?
A It does not.
Q Does it reflect that he also had a right to compel the court to subpoena witnesses on his behalf 
BY THE COURT: That's not necessary under our law."
The defense contends that the minutes of the guilty plea do not affirmatively show that Clarence Lewis was advised that the plea constituted a waiver of his right to confront his accusers and to compulsory process, as required by Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969). The defense argues that in the absence of such a showing, the defendant's prior guilty plea should not be used to increase his sentence pursuant to R.S. 15:529.1.
In Boykin the Supreme Court emphasized three federal constitutional rights which are waived by a guilty plea: the privilege against self-incrimination; the right to trial by jury; and the right to confront one's accusers.[2] The court then announced its unwillingness to presume waiver of these important rights from a silent record. Boykin was decided in 1969. The prospect of releasing felons incarcerated after pleas of guilty, when the record in the case did not affirmatively show the knowing and voluntary waiver of articulated constitutional rights, resulted in a stuttering approach to the application of federal constitutional law to state court proceedings in Louisiana. In *1160 State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), we recognized the Boykin decision; the record before us showed that the defendant was not informed of the three important constitutional rights as required by Boykin, and did not waive them. It was not necessary to decide whether the sentencing hearing could be reconstructed, or whether the conviction must be upset in the absence of a record of an adequate Boykin examination contemporaneous with the plea of guilty.
However, in State ex rel. LeBlanc v. Henderson, 261 La. 315, 259 So.2d 557 (1972), this court decided to make the Jackson decision (our construction of Boykin v. Alabama ) applicable only to guilty pleas taken after December 8, 1971, the date of finality of State ex rel. Jackson v. Henderson. The LeBlanc case held that the sentencing hearing could be reconstructed in those cases in which the guilty plea was taken prior to December 8, 1971. That is, even though no contemporaneous record of the proceedings surrounding a plea of guilty was made, the state was permitted to introduce relevant evidence to show that the plea was free and voluntary.
However, State ex rel. LeBlanc v. Henderson involved a habeas corpus proceeding filed a year after the defendant was sentenced, in which the defendant sought to set aside his previous plea of guilty. Here the defendant does not seek to have his plea of guilty set aside, but raises its invalidity as a defense in a proceeding designed to enhance his sentence for the present offense. The plea of guilty which formed the basis for the multiple offender sentence in this case was taken February 16, 1970, now almost nine years ago. The more time that passes, the more difficult it will be to reconstruct the plea of guilty and make a reasonably accurate determination of its free and voluntary nature. Therefore, we will not extend State ex rel. LeBlanc v. Henderson, supra, to a case in which the collateral effect of a plea of guilty is the issue. In a multiple offender hearing, only those previous pleas of guilty may be used to enhance a sentence which are supported by a contemporaneous record of a Boykin examination demonstrating the free and voluntary nature of a plea of guilty with an articulated waiver of the constitutional rights required by Boykin v. Alabama.[3]
This assignment of error has merit and the defendant Clarence Lewis' sentence is set aside.
For these reasons, the conviction and sentence of Isadore Lewis are affirmed. The conviction of Clarence Lewis is affirmed, but his sentence is set aside, and the case is remanded to the district court for further proceedings consistent herewith.
SUMMERS, C. J., and MARCUS, J., dissent in part and concur in part and assign reasons.
BLANCHE, J., not participating.
MARCUS, Justice (concurring in part and dissenting in part).
I concur in the conviction and sentence of Isadore Lewis and the conviction of Clarence Lewis. I dissent from the setting aside of Clarence Lewis' sentence.
SUMMERS, Chief Justice (dissenting in part and concurring in part).
I concur in the conviction and sentence of Isadore Lewis and the Conviction of Clarence Lewis. However, like Mr. Justice MARCUS I cannot agree that the sentence of Clarence Lewis should be set aside. The basis for setting aside the sentence is stated in the majority. It is said that in a multiple offender hearing, only those previous pleas of guilty may be used to enhance a sentence which are supported by a contemporaneous record of a Boykin examination demonstrating the free and voluntary nature of a plea of guilty with an articulated waiver of the constitutional rights required by Boykin *1161 v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).
To support this conclusion the Court relies upon the absence of any reference to a waiver of the right to confrontation of witnesses at the time of the guilty plea.
Although the United States Supreme Court states in its opinion in Boykin that several federal constitutional rights are waived when a plea of guilty is entered in a state courtamong them the privilege against compulsory self-incrimination, the right to trial by jury, and the right to confront one's accusersnowhere does the opinion state that an accused who pleads guilty must specifically and serially waive each of these rights in turn. See State v. Johnson, 260 La. 902, 257 So.2d 654 (1972). (Summers dissenting). In my opinion, therefore, the majority's reliance upon Boykin is misplaced.
As the quotation from the minutes of the trial court makes clear, Clarence Lewis was advised of his right to trial by jury, the right to appeal, and the probable and actual consequences of his plea; it was ascertained that his plea was voluntary and also determined at that time that he was in fact guilty of the crime charged. Simply because there was no reference to the right to confront the witnesses against him, the plea is set aside. As the Federal Fifth Circuit Court of Appeal has held after an exhaustive and scholarly review of the Boykin decision,
"Finally, we hold that express articulation and waiver of the three constitutional rights referred to in Boykin by the defendant at the time of acceptance of his plea is not required, since it appears from the record that McChesney entered the plea intelligently and voluntarily with knowledge of its consequences." McChesney v. Henderson, 482 F.2d 1101 (1973); cert. denied, 414 U.S. 1146, 94 S.Ct. 901, 39 L.Ed.2d 102.
Stated simply Boykin stands for the proposition that is "error, plain on the face of the record, for the trial judge to accept [a] guilty plea without an affirmative showing that it was intelligent and voluntary." Reference in Boykin to constitutional rights waived by a guilty pleaself-incrimination, trial by jury and confrontation of one's accuserswas an effort to impress upon trial judges the need of "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and its consequences." This requirement was fully satisfied in the case at bar.
In my view every requirement of Boykin was complied with and this Court should desist from these highly technical and unreasonable demands upon the trial courts.
I respectfully dissent.
NOTES
[1] Assignments of error neither briefed nor argued on appeal are considered abandoned. State v. Schwartz, 354 So.2d 1332 (La.1978); State v. Lewis, 353 So.2d 703 (La.1977).
[2] The record of Clarence Lewis' plea of guilty includes a specific reference to the right to trial by jury. The defense has failed to refer to the absence of any specific reference to the privilege against self-incrimination. Only the absence of any reference to the confrontation right is before us since nowhere in Boykin did the court mention the right to compel the presence of witnesses.
[3] On January 11, 1979, for example, in State v. Cook, Jr., 365 So.2d 380, we denied a writ of application to review the judgment of a trial judge quashing a bill charging the defendant with the possession of a firearm after having been convicted of a felony; the bill was quashed because there was no contemporaneous record of a Boykin examination for the felony conviction.