I,STEWART, J.
Following a bench trial, James Townsend was convicted of illegal use of a weapon while committing a crime of violence. He was sentenced as a second felony offender to 25 years at hard labor without benefit of parole, probation or suspension of sentence. The defendant now appeals the multiple offender conviction and his sentence. For the following reasons, we vacate the defendant’s sentence and remand for resentencing consistent with this opinion.
FACTS
On January 14, 2000, Shreveport police were dispatched on an “unknown trouble” call to the Queensborough area. As the first officer to arrive at the scene, James Tipton (“Tipton”) was flagged down by Carrie Bates (“Bates”) as he approached 3829 Morrow Street. Bates told him that her daughter had been shot and was lying in the front yard of her house. When Tipton arrived at that residence another officer, David Heaser (“Heaser”), pulled up behind him. Tipton saw that a teenage girl was lying on her back about 15 feet from the front door. He ran up to her and saw that she had some gunshot wounds. The victim was later identified as D.B., a 14-year-old girl.
Tipton told Heaser to go secure the back of the residence. As, he knelt down to check the girl’s wounds, he heard Heaser tell someone to drop a weapon. Tipton ran to the back to assist him, but when he got to the back of the house, Heaser reported that the suspect had gone into the house. The officers then requested additional police back up. When the back up arrived, D.B. was moved to the side of the house for safety and an off-duty | gfireman rendered first aid to her. The suspect, defendant James Townsend, eventually *887 surrendered and came out of the house unarmed and without incident.
D.B. was taken to LSU Medical Center where she underwent surgery for wounds to her abdominal area. She remained hospitalized for over a month.
A search warrant was obtained for the residence and officers found a silver semiautomatic handgun. Carrie Bates said she was the owner of the gun, but that she had given it to Townsend’s mother for safekeeping.
At trial, D.B. testified that prior to the shooting, she and Townsend were inside the residence with her sister, Renika, who is also a minor, Renika’s infant, and a friend of the young girls identified only as “Muffin.” Townsend was her mother’s boyfriend and had lived in the residence with them for over a year. Townsend and D.B. had an argument over her behavior with boys, and he threatened to tell her mother. When Bates arrived at the house, Townsend was telling her about the altercation when he grabbed D.B. by her shorts and slammed her up and down on the floor. Bates and Renika tried to stop him.
Bates ran outside to go to a neighbor’s house to call the police. D.B. and Renika also ran out of the house. However, D.B. realized that her infant niece and Muffin were still in the house so she went back into the residence to get them. As she was walking out of the door, Townsend started shooting D.B., hitting her in the side and in her leg.
|sOn April 18, 2001, the trial court found the defendant guilty as charged of illegal use of a weapon while committing aggravated battery. The state filed a third felony habitual offender bill on June 19, 2001. Counsel for the defendant filed a motion to quash on the grounds that the two predicate offenses occurred on the same day. The trial court allowed the defendant to argue several motions pro se and evidence was taken at several different hearings. These pro se motions were denied on September 3, 2002. Counsel for the defendant filed a motion for new trial and a motion for post-verdict judgment of acquittal on November 11, 2002. These motions were never argued or ruled on.
On September 3, 2002, the trial court found Townsend to be a second felony offender after the state concurred that only one of the convictions could be used to enhance the penalty. At the sentencing hearing on December 10, 2002, the trial court allowed the defendant to argue his pro se motion to quash the habitual offender bill he filed on the same day. The defendant raised two new issues that had not been presented at the original habitual offender hearing. The trial court denied his motion. The trial court sentenced the defendant to 25 years at hard labor without the benefit of parole, probation or suspension of sentence. He filed this timely appeal.
DISCUSSION
Townsend argues that the district court erred in adjudicating him as a second felony offender. He argues that the documentation was insufficient to indicate that he knowingly and voluntarily pled guilty to the predicate offense.
l/The state argues that the document admitted into evidence showed that Townsend was represented by counsel and waived his rights under Boykin in the proceedings of the prior offense.
La.R.S. 15:529.1 allows for enhanced sentencing for persons convicted of second and subsequent offenses. It reads:
A. (1) Any person who, after having been convicted within this state of a felony or adjudicated a delinquent under Title VIII of the Louisiana Children’s *888 Code for the commission of a felony-grade violation of either the Louisiana Controlled Dangerous Substances Law involving the manufacture, distribution, or possession with intent to distribute a controlled dangerous substance or a crime of violence as listed in Paragraph (2) of this Subsection, or who, after having been convicted under the laws of any other state or of the United States, or any foreign government of a crime which, if committed in this state would be a felony, thereafter commits any subsequent felony within this state, upon conviction of said felony, shall be punished as follows:
(a) If the second felony is such that upon a first conviction the offender would be punishable by imprisonment for any term less than his natural life, then the sentence to imprisonment shall be for a determinate term not less than one-half the longest term and not more than twice the longest term prescribed for a first conviction;
* * *
In Boykin v. Alabama, 395 U.S. 238, 242, 89 S.Ct. 1709, 1711, 23 L.Ed.2d 274 (1969) the United States Supreme Court held on appeal of a criminal conviction that “it was error, plain on the face of the record, for the trial judge to accept petitioner’s guilty plea, without an affirmative showing that it was intelligent and voluntary.” Concerning the record of such a guilty plea on appeal, the Court found that because a guilty plea constitutes a waiver of several constitutional rights, including the privilege against self-incrimination, the right to trial by jury, and the right to confront one’s ^accusers, the prosecution was required to “spread on the record the prerequisites of a valid waiver.” Id. Thus, the Court held that it could not presume a voluntary and knowing waiver of these rights from a silent record.
In an attempt to comply with Boykin, the Louisiana Supreme Court held in State ex rel. Jackson v. Henderson, 260 La. 90, 255 So.2d 85 (1971), a post conviction proceeding, that a guilty plea will be considered knowingly and voluntarily made only if the accused was informed of and made an articulated waiver of his right to jury, his right to his confront his accusers, and his privilege against self-incrimination. Because the transcript of the colloquy with the judge in Jackson showed that the accused was not informed of and did not waive his three Boykin rights, the plea of guilty was set aside. However, the Jackson court pretermitted deciding whether a contemporaneous record must be made of the examination. In State v. Lewis, 367 So.2d 1155 (La.1979), the court was faced with deciding whether to extend its requirements under Jackson to the determination of guilty pleas sought to be used at habitual offender hearings. The court held that in a multiple offender hearing, only those previous pleas of guilty may be used to enhance a sentence which are supported by a contemporaneous record which shows the “accused was informed of and made a knowing waiver of his right to jury trial, his right to confront his accusers, and his privilege against self incrimination. ” Id. (Emphasis added).
To use a prior guilty plea to enhance punishment, the state has the initial burden to show that there was a conviction and that the defendant | fiwas represented by counsel (or waived counsel) at the time he entered his plea. State v. Shelton (La.1993), 621 So.2d 769. Once the state produces such proof, the burden then shifts to the defendant to prove “a significant procedural defect in the proceedings.” Once a defendant makes an affirmative showing of an infringement of his rights or a procedural irregularity in the plea transcript, the burden reverts to the state and it must *889 prove the constitutionality of the predicate plea. State v. Zachary, 2001-3191 (La.10/25/02), 829 So.2d 405.
The trial court in effect allowed Townsend two attempts to quash the multi-felony offender bill. Counsel for Townsend timely filed a motion to quash the bill of information on the grounds that the two predicate offenses arose on the same day and out of the same criminal act. At the hearing on November 14, 2002, the state conceded this point and the matter proceeded as a second habitual offender hearing.
The evidence produced was a certified copy of a document titled, “Judgment of Plea of Guilty or Nolo Contendere Before Court Waiver of Jury Trial.” The state had a fingerprint expert take prints from Townsend in open court. The expert then testified that the thumb print matched the print on the document.
The trial court admitted the document from a Texas court into evidence. The form-style judgment stated that the defendant was present in court with his attorney and that he had specifically waived his right to trial by jury and his rights to confront witnesses. The form was silent as to a waiver of a right to remain silent. It only referenced a waiver of rights form |7that the defendant had supposedly signed. It further referenced that the court found the defendant to be competent and that the guilty plea was being entered into freely and voluntarily. The form indicated he pled guilty to theft on August 25,1987.
Townsend’s trial counsel then argued that the state’s use of a waiver form alone was insufficient to overcome the burden to show the plea was free and voluntary under Boykin. He further argued that the state failed to offer any minutes or a transcript of the plea. Moreover, he also argued that the name on the document was James Henry Townsend, II, and that the habitual offender bill and other proceedings refer to the defendant as James Henry Townsend, III.
The state rebutted these arguments by showing that the fingerprint identification proved he was the same person as the one convicted in Texas in 1987. The state then argued that the form was adequate to show that the defendant was advised of and waived his rights and that the burden was on the defense to show that “in fact it was not freely and voluntarily made.” The trial court ruled that Townsend was a second felony offender “based upon the evidence and argument of counsel.”
However, Townsend correctly states in brief that the judgment showing the conviction does not contain any information to show that he waived his right to remain silent. Since this is the only piece of evidence the state submitted, this document on its face is enough to meet the defendant’s burden to show there was a procedural defect in the ^documentation. The burden then shifts to the state to produce more evidence to prove the constitutionality of the plea.
Under the precepts formulated in Zachary, supra, the state has not met the burden of proving the appellant waived his right to remain silent. That case states:
If the State produces anything less than a “perfect” transcript, for example, a guilty plea form, a minute entry, an “imperfect” transcript, or any combination thereof, the judge then must weigh the evidence to determine whether the State has met its burden of proving that defendant’s prior guilty plea was informed and voluntary, and made with an articulated waiver of the three Boykin rights.
By the term perfect transcript, we mean one which reflects a voluntary, informed, and articulated waiver of the three specific rights mentioned in Boykin. State v. Shel *890 ton, supra. A guilty plea form which excludes one of the three rights enunciated in Boykin unsupported by a minute entry or guilty plea colloquy is insufficient for the state to meet its burden of proof that the predicate plea was entered into knowingly and voluntarily for the purposes of a multiple bill. As such, we reverse the habitual offender conviction and remand this matter to the trial court for re-sentencing. This finding pretermits any discussion of the defendant’s second assignment of error asserting that his sentence was excessive.
CONCLUSION
For the foregoing reasons, the defendant’s conviction as a habitual offender is vacated and the matter remanded to the trial court for sentencing.
VACATED AND REMANDED.
APPLICATION FOR REHEARING
Before WILLIAMS, STEWART, GASKINS, PEATROSS, and DREW, JJ.
Rehearing denied.